UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MARIE KAATZ and ABIGAIL GAGLIARDI,  :
individually on behalf of themselves and all :
others similarly situated,  :  **OPINION AND ORDER**
                 Plaintiffs,  :
                   :  16 CV 237 (VB)
v.  :
                   :
HYLAND'S INC., STANDARD  :
HOMEOPATHIC COMPANY, and JOHN  :
DOES 1-25,  :
                 Defendants.  :
--------------------------------------------------------------x

Briccetti, J.:

      This putative class action is based on plaintiffs' purchase of homeopathic baby products from defendant Hyland's, Inc., in various locations throughout the United States. Plaintiffs allege Hyland's, Inc., its parent company Standard Homeopathic Company, and "John Does 1-25" (collectively, "defendants") falsely advertised and marketed homeopathic baby products as effective and natural. Plaintiffs allege they were injured because they paid a premium for defendants' products over comparable products due to the allegedly false representations.

      Named plaintiffs are New York citizens bringing three claims on behalf of a putative nationwide class, and five claims on behalf of a putative New York subclass. Defendants moved to dismiss the three causes of action brought by the putative nationwide class pursuant to Rule 12(b)(1), arguing the named plaintiffs do not have standing to sue under any state's laws except New York's. (Doc. #15).[1] Defendants alternatively moved to dismiss the nationwide class

---

[1] Defendants acknowledge plaintiffs' standing to bring all of their claims under New York law. (Defs.' Reply at 7) ("Defendants do not dispute that, based on the pleadings, Plaintiffs have standing to assert their claims for relief under New York law.").

claims pursuant to Rule 12(b)(6), arguing that a nationwide class requiring the application of the laws of all fifty states is unmanageable.

For the following reasons, the motion is DENIED.

The Court has subject matter jurisdiction under 28 U.S.C. § 1332(d).

## BACKGROUND

For purposes of deciding the pending motion, the Court accepts as true all well-pleaded allegations in the complaint and draws all reasonable inferences in plaintiffs' favor.

Plaintiffs Marie Kaatz and Abigail Gagliardi are New York citizens who purchased Hyland's Baby Teething Gel, Hyland's Baby Cough Syrup, Hyland's Baby Gas Drops, Hyland's Baby Infant Earache Drops, and Hyland's Baby Nighttime Tiny Cold Syrup (collectively, the "Products"). Defendant Hyland's Inc., and its parent corporation, defendant Standard Homeopathic Company, allegedly manufactured, sold, and distributed the Products.[2]

Plaintiffs contend the packaging of each of the Products contains statements representing the product is natural and effective at relieving or improving symptoms of pain or discomfort. For example, plaintiffs allege the front of Hyland's Baby Teething Gel's packaging states that it "provides 'Natural[,]' 'FAST RELIEF OF PAIN AND IRRITABILITY FROM TEETHING,'" and the back states it "'[t]emporarily relieves symptoms of pain, simple restlessness and wakeful irritability due to cutting teeth. Helps reduce redness and inflammation of gums.'" (Compl. ¶ 23). Plaintiff recite similar statements from the packaging for Hyland's Baby Nighttime Tiny Cold Syrup, Baby Cough Syrup, Baby Infant Earache Drops, and Baby Gas Drops.

---

[2] Plaintiffs also sue "John Does 1-25" who are allegedly "responsible for having sold and/or advertised and/or marketed the Products and are legally responsible for the damages suffered by Plaintiffs and the members of the Class." (Compl. ¶ 13).

2

Plaintiffs allege defendants falsely advertised and marketed the Products as effective and natural because the Products are, in fact, ineffective and contain synthetic ingredients.

First, plaintiffs allege the Products are not effective at relieving or improving the symptoms they purport to relieve or improve. Plaintiffs contend the Products are ineffective because they "contain no molecules of the purportedly active ingredients . . . [or] they are too diluted to have any benefit." (Compl. ¶ 38).[3] Plaintiffs cite several studies or statements to support their contention that homeopathic remedies are not effective, specifically, (i) a study of homeopathic remedies commissioned by the British government; (ii) a statement by "the director of the Food and Drug Administration's ["FDA"] division of new drugs and labeling compliance;" and (iii) two meta-analyses of homeopathic remedies. (Id. ¶ 42-47).

Second, plaintiffs allege defendants' claims that the Products are "natural" are false and misleading because the Products contain "synthetic" ingredients, including sodium benzoate, potassium sorbate, calcarea phosphorica, vegetable glycerin, hydroxyethylcellulose, and sorbic acid. (Compl. ¶ 67). Although these ingredients are listed on the backs of the Products' packaging, plaintiffs allege a reasonable consumer would understand the package's "natural" claim to mean the Products do not contain synthetic ingredients, and would not understand these ingredients are synthetic by merely reading the label.

Plaintiffs assert the following eight causes of action: (i) violation of New York General Business Law Section 349; (ii) violation of New York General Business Law Section 350; (iii) violation of all fifty states' consumer protection statutes; (iv) breach of all fifty states' warranty laws; (v) violation of the federal Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301

---

[3] Plaintiffs allege homeopathy relies on using "highly diluted preparations" and that the "Products' purportedly active ingredients are diluted" until they contain, at most, one molecule per million parts of water or solution. (Compl. ¶¶ 29, 36-37).

et seq.; (vi) breach of the implied warranty of fitness for a particular purpose; (vii) negligent misrepresentation; and (viii) unjust enrichment. The complaint is ambiguous as to which causes of action are brought on behalf of the nationwide class, and which are brought on behalf of the New York subclass. After defendants moved to dismiss, plaintiffs clarified that causes of action three, four, and five are brought on behalf of the nationwide class.[4]

Defendants moved to dismiss plaintiffs' three causes of action brought on behalf of the putative nationwide class for lack of standing. Fed. R. Civ. P. 12(b)(1). Defendants argue plaintiffs, as New York citizens, lack standing to assert claims on behalf of unnamed plaintiffs for violations of (i) the other forty-nine states' consumer protection statutes, (ii) the other forty-nine states' warranty laws, and (iii) the MMWA, to the extent that statute relies on and incorporates the other forty-nine states' warranty laws. (Defs.' Reply at 1).

Defendants alternatively moved to dismiss the nationwide class claims "in their entirety" pursuant to Rule 12(b)(6), arguing a class applying the laws of all fifty states is unmanageable. (Defs.' Br. at 19-20).

## DISCUSSION

I.  Legal Standards

    A.  Rule 12(b)(1) Standard

"[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." Durant, Nichols, Houston,

---

[4] Defendants' motion to dismiss initially sought to dismiss the causes of action that rely on New York law to the extent plaintiffs brought them on behalf of a putative nationwide class. Defendants did not further argue that point in their reply brief after plaintiffs clarified that five of their eight claims are on behalf of a putative subclass of New York consumers – not a nationwide class. (Defs.' Reply at 2) ("Although not specified in the Complaint, Plaintiffs have now clarified that Claims One, Two, and Six through Eight will proceed only for a New York subclass. Defendants therefore will not further argue these points.").

Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009) (internal quotation marks omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011), aff'd, 133 S. Ct. 721 (2013) (internal quotation marks omitted). The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists. Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

When, as here, the case is at the pleading stage, in deciding a motion to dismiss under Rule 12(b)(1), the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." Conyers v. Rossides, 558 F.3d at 143. "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." Buday v. N.Y. Yankees P'ship, 486 Fed. Appx. 894, 895 (2d Cir. 2012) (summary order) (quoting Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992)) (internal quotation marks omitted). When a factual challenge to the Court's jurisdiction has been raised, "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings." Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).

If plaintiffs lack Article III standing, a court lacks subject matter jurisdiction to hear their claim. Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 198 (2d Cir. 2005). The Supreme Court has held that constitutional standing requires a plaintiff to establish at minimum three elements: (i) he suffered an "injury in fact"; (ii) a causal connection between the injury and defendant's conduct; and (iii) a federal court decision is likely to redress the injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

5

B.     Rule 12(b)(6) Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678.  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

II.    Standing to Bring Claims Based on Various States' Laws

Defendants argue the named plaintiffs lack standing to bring a putative nationwide class action under any state's laws except their own, and that the Court should dismiss the three claims brought on behalf of the nationwide class to the extent those claims rely on other states' laws.

The Court disagrees.

Although standing is generally a threshold issue for an Article III court to determine at the outset of the case, the Supreme Court created an exception for courts to address class certification prior to standing when certification issues are "'logically antecedent' to Article III concerns."  Ortiz v. Fibreboard Corp., 527 U.S. 815, 816 (1999) (quoting Amchem Products, Inc.

v. Windsor, 521 U.S. 591, 612 (1997)); see Mahon v. Ticor Title Ins. Co., 683 F.3d 59, 65 (2d Cir. 2012) (noting the "'logical antecedence' language is relevant when resolution of class certification obviates the need to decide issues of Article III standing").

There is a "growing consensus among district courts that class certification is 'logically antecedent,' where its outcome will affect the Article III standing determination, and the weight of authority holds that in general class certification should come first." Winfield v. Citibank, N.A., 842 F. Supp. 2d 560, 574 (S.D.N.Y. 2012) (quoting Blessing v. Sirius XM Radio, Inc., 756 F.Supp.2d 445, 451 (S.D.N.Y. 2010)).  In other words, when "class certification is the source of the potential standing problems, class certification should precede the standing inquiry." In re Digital Music Antitrust Litig., 812 F. Supp. 2d 390, 406 (S.D.N.Y. 2011) (quotations omitted).

Named plaintiffs in a putative consumer protection class action may assert claims under laws of states where they do not reside to "preserve those claims in anticipation of eventually being joined by class members who do reside in the states for which claims have been asserted." Blessing v. Sirius XM Radio, Inc., 756 F.Supp.2d at 452.  The relevant standing inquiry "is not whether the Named Plaintiffs have standing to sue Defendants . . . but whether their injuries are sufficiently similar to those of the purported Class to justify the prosecution of a nationwide class action." In re Grand Theft Auto Video Game Consumer Litig. (No. II), 2006 WL 3039993, at *3 (S.D.N.Y. Oct. 25, 2006).  That standing inquiry is more appropriately addressed at the class certification stage when courts consider the commonality and typicality prerequisites of class actions.  See In re DDAVP Indirect Purchaser Antitrust Litig., 903 F. Supp. 2d 198, 214 (S.D.N.Y. 2012).

Here, it is appropriate to defer a resolution of plaintiffs' standing until the class certification stage because class certification issues are the source of any potential standing

problems.  There is no question the named plaintiffs have standing to bring claims against defendants under the consumer protection and warranty laws of New York.  Class certification will address whether the named plaintiffs' injuries are sufficiently similar to the injuries of the putative nationwide class such that a nationwide class action is justified.  That inquiry will inform whether there are plaintiffs with standing to bring claims under or based on[5] the laws of states other than New York.

Defendants argue "many courts, including those in [the Second] Circuit, determine that the best course is to assess standing of named plaintiffs prior to class certification." (Defs.' Reply at 4).  To the extent these courts have dismissed claims before class certification for lack of standing – because the claims were brought under states' laws other than the state where the named plaintiffs resided – those decisions are not binding on this Court and the Court does not find their reasoning persuasive.  See Temple v. Circuit City Stores, Inc., 2007 WL 2790154, at *1 (E.D.N.Y. Sept. 25, 2007); Parks v. Dick's Sporting Goods, Inc., 2006 WL 1704477, at *1 (W.D.N.Y. June 15, 2006).[6]  Instead, the Court joins in the "growing consensus" and finds that class certification is logically antecedent to standing when, as here, class certification is the

---

[5]   Although the MMWA is a federal statute, liability under it is based on state warranty laws.  (Defs.' Br. at 10-11; Pls.' Opp. at 10).  See Ebin v. Kangadis Food Inc., 2013 WL 3936193, at *3 n.2 (S.D.N.Y. July 26, 2013) (noting the MMWA "incorporates and federalizes state-law breach of warranty claims, including state-law standards for liability and damages").

[6]   Certain cases relied upon by defendants are distinguishable from this case.  See, e.g., Mosely v. Vitalize Labs, LLC, 2015 WL 5022635, 1 (E.D.N.Y. Aug. 24, 2015) (granting summary judgment in part, dismissing claims brought under the laws of states where the named plaintiff did not buy the products); Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd., 886 F. Supp. 2d 328, 339 (S.D.N.Y. 2012) (holding plaintiff could not avoid his own lack of standing to assert a securities fraud claim by bringing a putative class action on behalf of unnamed plaintiffs who may have a cognizable claim).

source of the potential standing problems.  In re DDAVP Indirect Purchaser Antitrust Litig., 903 F. Supp. 2d at 214.

Defendants also argue "class certification regarding the out-of-state claims will not be dispositive, as Plaintiffs have state law claims for a New York subclass."  (Defs.' Reply at 6). But resolving class certification first, especially the commonality and typicality prerequisites, may "obviate[] the need to decide issues of Article III standing" with respect to the nationwide class claims, regardless of the New York subclass.  Mahon v. Ticor Title Ins. Co., 683 F.3d at 65.

Thus, because class certification is logically antecedent to standing in this case, the Court will reserve the determination of plaintiffs' standing until class certification.[7]

III.   Manageability

Defendants also seek dismissal of the claims brought on behalf of the putative nationwide class because "a class claim that requires the application of the laws of all fifty states is simply not manageable."  (Defs.' Mot. at 19).  See Fed. R. Civ. P. 23(b)(3)(D).

Although defendants' argument may well have merit, it is premature.

Whether the putative nationwide class is unmanageable speaks to plaintiffs' burden of demonstrating the class meets the four requirements of Rule 23(a) as well as one of the criteria of Rule 23(b).  However, "Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must

---

[7] Because plaintiffs clarified that their MMWA claim applied to the nationwide class in their opposition to defendants' motion, defendants included the MMWA in their standing argument for the first time in their reply brief.  (Defs.' Reply at 2).  To be clear, the Court's holding applies equally to the putative class claim for violation of the MMWA.  Because the Court concludes that class certification is logically antecedent to plaintiffs' standing to bring claims under states' warranty laws (other than New York's), it follows that plaintiffs' standing to bring MMWA claims based on states' warranty statutes should also be determined at the class certification stage.

be prepared to prove that there are <u>in</u> <u>fact</u> sufficiently numerous parties, common questions of law or fact, etc." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).

Defendants are seeking dismissal of plaintiffs' putative class before plaintiffs could prove the putative nationwide class complies with Rule 23. Although it appears to the Court that plaintiffs will have a high hurdle to demonstrate the putative nationwide class meets the requirements of Rule 23(a) and (b), it would be premature to reach a finding as to the putative class's manageability before plaintiffs have had an opportunity to conduct any class certification discovery. See Parker v. Time Warner Entm't Co., L.P., 331 F.3d 13, 22 (2d Cir. 2003) ("Absent at least limited discovery concerning the composition of the class . . . the [District] Court's conclusion that the size of the class would inevitably lead to . . . significant manageability problems, was speculative."); Philip Morris Inc. v. Nat'l Asbestos Workers Med. Fund, 214 F.3d 132, 135 (2d Cir. 2000) ("[T]here can be no doubt that it is proper for a district court, prior to certification of a class, to allow discovery and to conduct hearings to determine whether the prerequisites of Rule 23 are satisfied.").[8]

Despite the fact that defendants' argument is premature, their concerns about the costs and resources associated with full-blown discovery are valid.

Accordingly, defendants' motion to dismiss plaintiffs' putative nationwide class claims due to manageability concerns is denied without prejudice to renew after the parties have conducted limited class certification discovery.

By separate order, the Court will schedule an initial conference in this case. Prior to the initial conference, the parties are directed to meet and confer to draft a discovery and case

---

[8] Facts adduced during class certification discovery will bear on the viability of plaintiffs' nationwide class, including "the likely difficulties in managing a class action" with claims based on the laws of all fifty states. Fed. R. Civ. P. 23(b)(3)(D).

management plan that prioritizes class certification discovery before merits discovery. The separate order will set a date by which the parties shall submit their discovery plan prior to the initial conference.

The parties' goal in drafting the proposed discovery plan is to streamline the Court's ability to decide class certification. See Fed. R. Civ. P. 23(c)(1)(A). With that goal in mind, the Court expects the parties to agree upon a list of matters that are legitimate subjects of class certification discovery.[9] The proposed plan must address defendants' question of what can be adduced during discovery that will address defendants' manageability concerns. (Defs.' Reply at 8).

## CONCLUSION

Defendants' motion to dismiss causes of action three, four, and five is DENIED without prejudice.

Causes of action one, two, six, seven, and eight are limited to the putative New York subclass.

In accordance with the foregoing, counsel are directed to meet and confer to draft a proposed discovery and case management plan that prioritizes class certification discovery before merits discovery. By separate order, the Court will set a deadline for the parties to submit the proposed discovery plan, and schedule an initial conference.

---

[9] The proposed discovery plan need not formally bifurcate discovery to the extent such formal bifurcation would lead to disputes about what is "class" discovery versus what is "merits" discovery.

The Clerk is instructed to terminate the motion. (Doc. #15).

Dated: July 5, 2016
      White Plains, NY

                                SO ORDERED:

                                _____
                                Vincent L. Briccetti
                                United States District Judge